[Civ. No. 43517. Second Dist., Div. Four. Jan. 3, 1975.]

INTERINSURANCE EXCHANGE OF THE
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA,
Plaintiff and Respondent, v.
GERRY VELJI, Defendant and Appellant.

## COUNSEL

Halloran & Drapkin and Peter D. Pettler for Defendant and Appellant.

Gilbert, Kelly, Crowley & Jennett, Robert W. Rau, Ellis J. Horvitz and Arthur E. Schwimmer for Plaintiff and Respondent.

## OPINION

COLE, J.*—The Interinsurance Exchange of the Automobile Club of Southern California (respondent) sued for a declaration that Gerry Jo Velji (appellant) was not afforded uninsured motorist protection under her automobile insurance policy with respondent with respect to an accident occurring on August 8, 1970. The trial court made findings of fact and conclusions of law in favor of respondent and judgment was entered.[1] We affirm.

*Facts*

Appellant's 1963 Chevrolet was insured by respondent under a policy in which she was the named insured. The policy contained uninsured motorist provisions. Among other things, the policy defined "insured" for purposes of the uninsured motorist coverage saying, so far as is relevant here: " 'insured' means . . . (b) if the named insured is an individual or husband and wife or a person designated as a named insured in an endorsement pertaining to this Part only, (1) such named

---

*Assigned by the Chairman of the Judicial Council.

[1]Actually the judgment granted no real relief since it merely provided ". . . that judgment be entered in favor of the plaintiff . . . ." No declaration was set forth. However, the parties treat the case as if the rights of the parties were declared in a judgment, and so do we.

insured and any relative, and (2) any person occupying a non-owned automobile while being operated by any such named insured; . . ."

"Named insured" was defined to mean not only the insured named in the policy declarations but also "if the named insured is an individual also includes his spouse, if a resident of the same household."

The policy stated under "Exclusions" that uninsured motorist coverage did not apply ". . . to bodily injury to the insured while occupying a motor vehicle owned by an insured, unless the occupied vehicle is an insured motor vehicle."

The policy was issued, as a renewal, to appellant for à one-year period commencing on May 26, 1970. On March 21, 1970, appellant married one Ramnik B. Velji. He owned a 1965 Rambler. From the date of the marriage, and to and including August 8, 1970, the Rambler was not covered by any applicable automobile liability insurance.

Appellant and her husband were members of the same household on August 8, 1970. On that date, while the husband was driving, the 1965 Rambler was in an accident due, allegedly, to the negligence of an uninsured motorist. Appellant was a passenger in the Rambler at the time. It is this accident which the trial court determined was excluded from the uninsured motorist coverage of the policy. Other facts will be discussed with reference to the particular points to which they relate.

### The Exclusion Was Properly Applied

Since appellant was in an accident while riding in her husband's car, and since he falls within the definition of an insured under the policy, the court concluded that the policy exclusion quoted above should apply. Appellant's primary argument to the contrary is that the exclusion is ambiguous, and is to be strictly construed against the insurer under familiar principles of insurance contract law. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 430 [296 P.2d 801, 57 A.L.R.2d 914]; *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 247 [66 Cal.Rptr. 374].) Appellant points out that exclusions are to be strictly construed. (*Valdez* v. *Federal Mut. Ins. Co.* (1969) 272 Cal.App.2d 223, 227 [77 Cal.Rptr. 411].)

The principles of insurance law relied upon are sound, but they do not apply to this case.     As was said in *Darrah, supra:* ". . . there can be no doubt of the right of the insurance companies to limit, in accordance

with section 11580.2, the coverage of their policies, and when they have done so the plain language of the limitations must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [other citations omitted]; *Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133, 137 [22 Cal.Rptr. 682].) And when the terms of an insurance policy are plain and explicit, the court will indulge in no forced construction so as to cast unassumed liability on an insurance company. . . ." (259 Cal.App.2d at p. 246.)

The policy exclusion quoted above is taken verbatim (with the immaterial exception that the statute uses the phrase "injury *of* the insured" while the policy says "injury *to* the insured") from the language of Insurance Code, section 11580.2, subdivision (c)(6). If it is ambiguous, and we do not hold that such is the case, the blame could not be charged to respondent. (*Darrah, supra,* at p. 247.)

This exclusionary clause of section 11580.2 was enacted in 1968. In the language of one commentator its effect was to ". . change a condition which insurance companies abhor: the situation where a person who does not carry insurance could take a 'free ride' on someone else's policy. No longer will relatives in the household of a named insured be able to use his uninsured motorist coverage to cover cars owned by them which are *NOT* insured." (Italics in original—Eisler, Cal. Uninsured Motorist Law Handbook (2d ed. 1974) p. 150.)

The purpose of the exclusion has also been discussed as follows: "This exemption prevents the coverage of one policy from extending to accidents involving other owned but uninsured vehicles, and reflects the theory that each motor vehicle should carry its own liability insurance and uninsured motorist coverage." (Cal. Uninsured Motorist Practice (Cont.Ed.Bar 1973) § 1.45, p. 33.)

It is true that appellant had purchased insurance for her own car. Her husband had none for his vehicle, however. To allow appellant to recover would give less of a "free ride" than if the husband sought to recover under his wife's policy, which was essentially the situation in *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210 [58 Cal.Rptr. 243], a case credited by Eisler, *supra,* with prompting the 1968 exclusion.

Nevertheless, in enacting the exclusion the Legislature used language which clearly excludes one in appellant's position as well as any other member of her family. We may not rewrite the statute to bring about a

contrary result even if that result could be argued to be socially desirable. That is for the Legislature.

Under the language of the exclusion (both the policy exclusion and that in the statute) the coverage does not apply to "*the* insured while occupying a motor vehicle owned by *an* insured" unless the vehicle is itself insured under the policy. Appellant suggests that the language cannot be read so as to relate the first use of the word "insured" in the exemption to the named insured and the second use of the word "insured" to a vehicle owned by another insured. Rather, it is urged, the word should refer in each of its two appearances in the exclusion to the same individual. Such an interpretation might or might not be more appropriate than the present one, but it is not what the Legislature has provided. The first term, "the insured," specifically refers to the person seeking to recover damages because of injury caused by an uninsured motorist; the second term, "an insured," reflects the fact that no coverage is afforded if the injury occurs while *any* vehicle owned by *any* insured is occupied by the one seeking damages, unless that vehicle is itself insured. The choice of the two different articles of speech is obviously purposeful. (See Ins. Code, §§ 11580.1, subd. (c) and 11580.2, subd. (c)(7) where the same language is used.)

*Other Contentions*

On August 2, 1971, appellant's marriage to Ramnik B. Velji was annulled on account of fraud. Appellant seeks to invoke the doctrine of "relation back" so as to resuscitate coverage. The argument, not well taken, is that the annulment made the marriage void *ab initio*. Therefore, the reasoning goes, appellant never was married to Ramnik B. Velji; he never was a spouse or relative, and thus he was not an "insured" whose uninsured vehicle fell within the exclusion of the policy. This argument stretches the doctrine of relation back too far.

The marriage here was only voidable, not void. (Civ. Code, § 4425, subd. (d).) And, "A judgment of nullity is conclusive only as to the parties to the proceeding and those claiming under them" (Civ. Code, § 4451.)

*Sefton* v. *Sefton* (1955) 45 Cal.2d 872, 875 [291 P.2d 439], emphasizes that "the doctrine of 'relation back' is not without its exceptions." When the rights of third parties are involved as here, the courts should be especially wary in applying the fiction of relation back. It would be most artificial to apply the concept here, in a manner injurious to the rights of

respondent as an innocent third party and we decline to do so.

Appellant contends that respondent was estopped to deny coverage. The trial court found that in May 1970, appellant reported the fact of her marriage to Velji to one Gary Beech, a field representative and agent of respondent. The court further found that on that occasion she told Beech that her husband, Velji, owned a 1965 Rambler which was insured by Farmers Insurance Group and would continue to be insured until August 1970. The court also found that she had told Beech that Velji had a California driver's license and that appellant had furnished Beech with the number of that license.[2]

Appellant argues that the trial court's finding that she told respondent's employee that her husband's vehicle had insurance is not supported by any competent evidence. As indicated above appellant denied making any such statement. Evidentiary support for it is found only in a document entitled "Application for Renewal of Insurance" introduced by respondent. The front side of the document reflects a change in appellant's last name to reflect her marriage together with a listing of her new address. Also written on the application is the husband's occupation and the name of his employer. The document is signed by respondent's employee, Beech, and by the appellant, the latter signing under language which states "I have read and subscribe to the statements contained in the application, including the statements and subscriptions agreement which appear on the reverse side hereof." In an area devoted to remarks the following writing appears on the reverse: "Mr. has car insured with Farmers which doesn't expire till 8-22-70 & will place with us at that time Add husband *Ramnik B. Velji DOB 8-5-42* 27 yrs old. 1 ticket no accidents Calif. Lic. No. R080056." Appellant objected to the introduction of this document on the ground that its existence had not been disclosed in respondent's answers to interrogatories.[3] Aside from this objection appellant urged upon the trial court only that the document was inherently unreliable and that its author Beech, rather than a custodian, should have been brought to court to be examined about it.

On appeal it is urged that the document was not properly authenticated as required by Evidence Code, section 1400 et seq.

---

[2]Appellant strenuously contests the above finding, relying on her testimony that she had no conversation concerning the status of the insurance coverage of her husband's car, and did not tell Beech the driver's license number. This contest is nothing more than a conflict in the evidence, resolved by the trial court against appellant.

[3]There is no merit to this objection or appellant's argument that the document should have been excluded as a sanction for failure to accurately answer interrogatories. The interrogatory referred to did not ask for this document.

Appellant did not make that objection in the trial court and under familiar principles cannot raise it now.

Further, the objection that a document has not been authenticated does not go to the truth of the contents of the document, but rather to the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent claims it to be. (Evid. Code, § 1400; Jefferson, Cal. Evidence Handbook, p. 535.) Authentication simply requires a party to establish as a preliminary fact the genuineness and authenticity of the writing. (Jefferson, *op. cit.,* p. 536.) Authentication can be established by any one of a variety of means. (Evid. Code, § 1410.) Here the judge, in making his preliminary factual determination could reasonably have concluded from comparing the writing on the front and back (Evid. Code, § 1417) that both sides were written by Beech, appellant herself admittedly having signed the front side along with Beech. The court also could have noted that information contained on the reverse of the document (that Velji was insured with Farmers until August [compare Evid. Code, § 1421]) could have been supplied only by appellant, and that such evidence must have been procured as an employee of respondent testified at the time the rest of the application was completed. There was no error in admitting the exhibit on the ground now urged, and the court's finding is supported by substantial evidence.

■ The estoppel contention is grounded on the claim that at the time of appellant's visit to respondent's office, Beech should have told appellant that if she became injured while riding in her husband's car she would not be covered. The court concluded that respondent was not estopped to deny coverage. While the court's reasons for this conclusion were not articulated by it, the conclusion is correct for at least two reasons.

In the first place, under the circumstances here present, appellant could not have had a reasonable expectation that the policy covering her 1963 Chevrolet automobile would provide uninsured motorist protection to her if she were injured by a negligent uninsured motorist while occupying her husband's also uninsured 1965 Rambler.

■ ". . . . In the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could *reasonably expect,* [fn. omitted] *must be called to his attention, clearly and plainly,* before the exclusions will be interpreted to relieve the insurer of liability or performance." (*Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 995 [116 Cal.Rptr. 528] (italics in the original); *Gray* v.

*Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267 [54 Cal.Rptr. 104, 419 P.2d 168]; *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 869 [27 Cal.Rptr. 172, 377 P.2d 284]; *Young* v. *Metropolitan Life Ins. Co.* (1969) 272 Cal.App.2d 453, 461 [77 Cal.Rptr. 382, 78 Cal.Rptr. 568].)

In measuring the reasonable expectations of the insured the court will look to the purpose and intent of the parties in entering into the contract, the insured's knowledge and understanding as a reasonable layman, the insured's normal expectation of the extent of the coverage of the policy and the effect, if any, of imposing the risk otherwise excluded upon the risk clearly undertaken by the insurer. (*Steven, supra,* 58 Cal.2d at p. 869.) The last two tests are clearly the most important in applying the test of determining the insured's reasonable expectations of coverage. In looking to the insured's reasonable expectations, the courts emphasize the basic insurance protection which has been held out to the insured. (*Gray, supra,* 65 Cal.2d at p. 280; *Logan, supra,* 41 Cal.App.3d at p. 995.)

In the context of the present case, appellant clearly was entitled to assume that she was purchasing uninsured motorist protection for her own vehicle. It is very much to be doubted whether her reasonable expectation of coverage included the possibility that a policy bought to cover her 1963 Chevrolet would also protect her while she was riding in her husband's automobile. This is particularly so where she herself told respondent that there was other insurance then on her husband's automobile and that that insurance would be transferred to coverage by respondent at the appropriate time.

We note also that the exclusion at issue here is one allowed by statute. To say that under the circumstances of this case the exclusion is invalid unless respondent affirmatively advises appellant of its existence is sharply to narrow the allowable exclusion provided by the Legislature and to reinstate the opportunity for the "free ride" discussed above. We cannot hold that respondent had a duty to disclose under these circumstances.

In the second place, one of the elements which must be shown to exist before estoppel is invoked is that the party to be estopped was fully advised of the facts. (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 287, 292 [341 P.2d 296].) Appellant told respondent that her husband's car was insured until the following August by another insurance company and then would be insured with respondent. Given that statement, even though it was in fact erroneous, respondent had no

reason to tell appellant that an exclusion would come into operation in the event that appellant was injured by a negligent uninsured motorist while appellant was riding in her husband's uninsured vehicle. Appellant's statement did not fully acquaint respondent with the true facts and one of the key elements necessary to invoke estoppel is missing.

The judgment is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.